*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEGGY AUCIELLO,

        Plaintiff-Appellant,

and

PAUL FANNIN,

        Plaintiff,

v

KAREN DENISE KINDER, NATIONAL
GENERAL INSURANCE COMPANY, AUTO
CLUB INSURANCE ASSOCIATION, HOME-
OWNERS INSURANCE COMPANY, and AUTO-
OWNERS INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
March 21, 2024

No. 364388
Genesee Circuit Court
LC No. 21-114844-NI

Before: M. J. KELLY, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

In this no-fault action, plaintiff-appellant, Peggy Auciello, appeals as of right the trial court's order granting a motion to enforce settlement and enter a dismissal order. On appeal, Auciello challenges the trial court's earlier order granting defendants, Karen Kinder and Home-Owners Insurance Company's, motions for summary disposition under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On July 4, 2018, Kinder rear-ended Auciello's vehicle while it was stopped at a red light. The force of the impact pushed the vehicle ahead of Auciello into the intersection. Following the crash, Auciello, who had been driving, claimed to have pain in her back, shoulders, and arms, and she remained in the car until the authorities arrived and assisted her to an ambulance. Auciello

informed the emergency medical services (EMS) technicians of her complaints and an ambulance subsequently transported Auciello to the hospital, where she was diagnosed with a cervical sprain and thoracic strain. She was discharged with instructions to follow up with her primary care physician.

On June 30, 2021, Auciello filed a complaint against defendants, contending that she suffered serious impairments of important body functions as a result of the July 4, 2018 car crash. Following discovery, Kinder filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that Auciello had failed to meet the threshold requirements required to recover under MCL 500.3135 of the no-fault act, MCL 500.3101 *et seq*. Home-Owners filed a joinder and concurrence in Kinder's motion. Following the parties' oral arguments, the trial court granted defendants' motions for summary disposition. This appeal follows.

## II. SERIOUS IMPAIRMENT OF BODY FUNCTION

### A. STANDARD OF REVIEW

Auciello argues that the trial court erred when it granted defendants' motion for summary disposition. This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

The no-fault act restricts tort liability for noneconomic losses arising out of the ownership, maintenance, or use of a motor vehicle to instances where "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1); *McCormick v Carrier*, 487 Mich 180, 192-193; 795 NW2d 517 (2010). MCL 500.3135(2) provides, in pertinent part:

(a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement.

In *McCormick*, 487 Mich at 215, our Supreme Court established a three-pronged test to determine whether a person has shown a "serious impairment of body function." The test requires:

(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*Id.*]

The analysis "is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis." *Id.* To determine whether an impairment affects the person's general ability to lead normal life, the person's life before the injury must be compared with the person's life after the injury. *Id.* at 202. A person's ability to lead his or her must be affected, although not destroyed, and there is neither a minimum percentage of a person's normal manner of living that must be affected nor a durational or temporal requirement. *Id.* at 202-203.

Auciello argues that she suffered an objectively manifested impairment, which included significant spinal, back, and shoulder injuries. An objectively manifested impairment is one that is "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* at 196. The existence of pain and suffering alone is insufficient under the serious impairment threshold; there must be evidence showing "a physical basis for [the plaintiff's] subjective complaints of pain and suffering." *Id.* at 197-198 (quotation marks and citation omitted).

On the record before this Court, Auciello cannot show that she suffered an objectively manifested impairment as a result of the 2018 crash. Although her records plainly reflect that she has serious impairments, the evidence presented does not establish any additional loss of function attributable to the 2018 crash. Rather, Auciello's medical records, Social Security application, and deposition testimony all indicate her impairments existed before the 2018 car crash as a result of car crashes in 2014 and 2017, as well as degenerative changes linked to age.

Specifically, Auciello filed a claim for Social Security disability benefits on May 19, 2017, in part, due to the following conditions: cervical disc disorder with radiculopathy, bilateral carpal tunnel syndrome, systemic inflammatory response syndrome, arthritis affecting upper and lower extremities, and nerve pain. In the application, she claimed the inability to function as of March 24, 2016. She also asserted that she was unable to work due to problems with her legs and being able to move around, caused by injuries sustained in a July 2014 car crash, which also aggravated her shoulders, back, and hands. Auciello further stated (1) that she suffered from fibromyalgia and she used assistive devices, such as a wheelchair, walker, and cane, (2) that she experienced pain in her neck and back that radiated into both shoulders, in addition to stiffness, and she could only sit for 5 to 10 minutes, stand for 10 minutes, and lift 5 pounds, and (3) that she had a history of chronic pain of the lumbar and cervical spine, bilateral shoulders, and right foot due to the 2014

car crash. The Social Security disability determination explanation additionally provided that (1) a January 2016 cervical MRI depicted mild central canal stenosis with mild neuroforaminal stenosis due to degenerative facet hypertrophy, in addition to moderate neuroforaminal stenosis, and (2) the severity of Auciello's condition resulted in a finding of disability. Also prior to the crash, Auciello additionally received steroid injections to treat her symptoms.

The August 6, 2018 computed tomography (CT) scan of Auciello's cervical spine rendered near-identical findings to her previous January 2016 imaging, and the 2018 scan depicted "no evidence of acute fracture in the cervical spine, stable mild degenerative spondylosis of the cervical spine with mild central canal stenosis[,]" in addition to mild and moderate foraminal stenosis. Similar conclusions were provided regarding the August 6, 2018 CT scan of Auciello's thoracic spine highlighting degenerative changes. Further, the October 12, 2021 medical images of Auciello's hands and wrists illustrated mild osteoarthritic changes and bilateral periarticular osteopenia without erosive changes, which were previously noted in her medical record. Notably, Auciello's primary care physician opined the following in her April 18, 2022 office visitation notes:

> [Auciello] presents wanting letter that states her limitation since her most recent car accident—I have explained to her that because she has chronic neck, back and shoulder pain from her previous accident—I am unable to determine any new loss of function from this most recent accident -she does clearly need assistance with heavy lifting, but this was true prior to the most recent accident.

While Auciello received treatment from Dr. Bruce Serven for her back pain and various misalignments in her spine between September 11, 2018 and October 11, 2019, Auciello's medical records reveal an extensive history of back and spinal issues, which were also previously treated using steroid injections. Auciello additionally asserted that her preexisting ailments were improving after the 2017 vehicle crash as she participated in a greater number of recreational activities and her pain levels increased after the 2018 crash. However, Auciello's subjective complaints were not corroborated with medical documents because there was no evidence of acute injury on the CT scans of her thoracic and cervical spines, rather, the tests revealed degenerative changes unrelated to the crash. Ultimately, Auciello's medical records, Social Security application, and deposition testimony all indicate that her alleged impairments existed before the 2018 crash, and that her subjective complaints are insufficient to establish an objectively manifested impairment or that the 2018 crash was the cause of any injury or exacerbation.

Auciello next argues that her injuries affected her ability to lead her normal life. Auciello testified that, before the underlying motor vehicle crash, she was able to engage in physical exercise and recreational sports and that, after the crash, she was no longer able to perform such activities. As a result, she currently occupied her time with medical appointments and chronic pain treatments. The impairment of an important body function affects a claimant's ability to lead their normal life when it "influence[s] some of the person's power or skill, i.e., the person's capacity, to lead a normal life." *McCormick*, 487 Mich at 201. A determination of this factor involves "a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis," and "necessarily requires a comparison of the [plaintiff's] life before and after the incident." *Id*. at 202.

The evidentiary record does not reflect a genuine issue of material fact that Auciello's capacity to lead her normal, daily life was altered after the subject incident because her medical records and Social Security disability document provide that she suffered from chronic pain and a limited range of movement due to her preexisting ailments. In her 2017 Social Security disability application, Auciello detailed how she "can't sit, walk for long, can't lift more than a gallon of milk." She stated also that she required a rest period of 30 minutes if she walked greater than 80 feet and that she struggled "walking, showering, holding a job, opening jars, pulling, twisting, bending down, remembering things, running, lifting, [and] shopping." Moreover, her medical history also reflects complaints of chronic pain.

Auciello testified that she was previously able to play miniature golf once every two weeks despite her noted carpal tunnel and spinal issues, but she was no longer able to participate because of her restricted shoulder, arm, and hand movement resulting from the underlying incident. Auciello was additionally unable to participate in bowling because of pain associated with the activity. While Auciello asserted that she was no longer able to participate in bowling or miniature golf due to the 2018 car crash, her preexisting injuries, including carpal tunnel syndrome and extensive injuries to her back, arms, and shoulders, would have restricted her engagement. Moreover, the bowling alley offered instruments to assist disabled persons with bowling, however, Auciello asserted that the activity still "bothered" her, and she did not attempt to use the instrument to minimize any subjective complaints. While Auciello advances that her postaccident life is occupied with pain, medical appointments, and the occasional walk in the park, her preaccident life featured a similar schedule per her medical records and Social Security disability documentation. Ultimately, Auciello failed to present documentary evidence to support her contention that her medical conditions or the aggravation of existing medical conditions were caused by the ownership, maintenance, or use of a motor vehicle as opposed to preexisting injuries or degeneration caused by the aging process.

Next, Auciello contends that a factual dispute concerning the nature and extent of her injuries existed; consequently, the trial court should not have decided the issue as a matter of law per MCL 500.3135(2)(a)(*ii*). However, defendants did not dispute the nature or extent of her injuries, i.e., defendants did not dispute that Auciello suffered strains due to the subject accident, or that she continued to suffer from pain in her back, shoulders, arms, and hands. Rather, defendants argued that Auciello's injuries did not meet the threshold requirements. Thus, there was no factual dispute that precluded the trial court from deciding the issue as a matter of law under MCL 500.3135(2).

Finally, during discovery Auciello was served with requests for admission. Under MCR 2.312(B)(1), "each matter as to which a request is made is deemed admitted unless, within 28 days after service of the request . . . the party to whom the request is directed serves on the party requesting the admission a written answer or objection addressed to the matter." As relevant to whether Auciello's general ability to lead her normal life was affected, she was asked to admit that her "life has not been impacted as a result of the accident in question." The record reflects that Auciello failed to respond to the request for admissions. In its opinion granting summary

disposition, the trial court determined under MCR 2.312(B)(1), that Auciello was deemed to have admitted that her life was not impacted by the 2018 car crash.[1] That admission is dispositive.

In conclusion, because Auciello failed to satisfy the serious-impairment threshold requirement iterated in MCL 500.3135, the trial court did not err in granting defendants' motions for summary disposition.

Affirmed. Defendants may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

---

[1] Although the trial court referred to the relevant discovery as "interrogatories," Home-Owners argued that the matter should be deemed admitted based upon Auciello's failure to respond to the requests for admission, and the trial court cited the court rule addressing requests for admission. As a result, it is clear that the court misspoke when it referred to the documents as "interrogatories."